Aeryn A. Heidemann (I.D. No. 025530)
**KUNZ PLITT**
**HYLAND & DEMLONG**
3838 N. Central Ave., Ste. 1500
Phoenix, Arizona 85012-1902
(602) 331-4600
aah@kunzlegal.com

Attorneys for Plaintiffs David and Ruth Waronker

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| David A. Waronker, a married man and Ruth A. Waronker, a married woman,<br><br>Plaintiffs,<br><br>v.<br><br>Bank of America, N.A., a foreign corporation; BAC Home Loans Servicing, L.P., a foreign corporation; Jane Does I-X; John Does I-X; ABC Corporations I-X; and Black and White Business Entities I-X;<br><br>Defendants. | No.<br><br>**VERIFIED COMPLAINT** |

Plaintiffs David A. Waronker and Ruth A Waronker ("the Waronker's"), by and through their attorneys, Kunz Plitt Hyland & Demlong, for their Complaint against Defendants alleges as follows:

## **JURISDICTION**

1.  The United States District Court for the District of Arizona has jurisdiction over this matter pursuant to 28 U.S.C.A. § 1332(a) in that the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

## PARTIES

2. Plaintiffs David A. and Ruth A. Waronker are citizens of the State of Arizona and residents of Maricopa County.

3. Upon information and belief, Bank of America N.A. ("Bank of America" or "the Bank") is a citizen of Delaware and North Carolina, with it being incorporated in Delaware and its principal place of business being in Charlotte, North Carolina.

4. Upon information and belief, BAC Home Loans Servicing, L.P. ("BAC Home Loans") is a wholly owned subsidiary of Bank of America, N.A. and is a citizen of California as its principal place of business is in Simi Valley, California.

## VENUE

5. Venue in this Court is proper under 28 U.S.C.A. § 1391(b) as the property that is the subject of this action is situated in this judicial district.

## JURY DEMAND

6. Plaintiffs demand a trial by jury on all claims so triable.

## NATURE OF THE COMPLAINT

7. In November 2005, the Waronker's entered into a contract to purchase their home, a single family residence located at 23448 North Church Road, Scottsdale, Arizona 85255 (the "Property").

8. The purchase price under the contract was $1,475,000.00.

9. The Waronker's put down $475,000.00 and financed the remaining $1,000,000.00.

10. The Waronker's secured financing from Bank of America.

11. The first mortgage the Waronker's took on the Property was for $1,000,000.00 and was financed through Bank of America loan number 6477351354 (the "Loan").

12. The Waronker's monthly mortgage payment under the Loan was $6,120.84.

13. The Waronker's invested approximately an additional $1 million into the Property in structural upgrades and renovations.

14. After investing approximately $1 million into the Property, the Waronker's took a second mortgage on the Property for $450,000.00, which was financed through Bank of America loan number 68218001010699.

15. The Waronker's initiated negotiations for modification of their first and second mortgages on the Property in June 2009.

16. The Waronker's second mortgage, Loan No. 68218001010699, was successfully and timely modified and has remained in good standing.

17. After four months of negotiations, on October 14, 2009, Bank of America, acting through its agent, Kathy Peavey, extended to the Waronker's an offer to modify their first mortgage (the "Offer"), a copy of which is attached hereto as Exhibit A.

18. The Offer expressly stated:

> This letter constitutes our offer to modify the Mortgage identified above, subject to the terms and conditions agreement. When signed by you, this letter will also constitute your acceptance and agreement to these terms and conditions.
> . . .
> Indicate your acceptance of this offer for a Modified Mortgage under the terms and conditions outlined on pages 2 and 3 by signing the attached acceptance, which must be signed by each borrower and returned within seven days from the date of this latter.  If we do not receive this signed acceptance letter, this offer will expire automatically without further notice.

- 3 -

19. Within twenty four hours of receiving the Offer, the Waronker's accepted.

20. As required by the express terms of the Offer, the acceptance was executed by both David and Ruth Waronker and was returned to Bank of America with a cashier's check in the amount of $738.59 for payment of associated escrow fees.

21. Bank of America processed the cashier's check for $738.59.

22. The Waronker's relied on the Offer that was extended by Bank of America, and their acceptance of that offer, which included consideration in the form of escrow fees.

23. The Waronker's did not receive any further communication from Bank of America regarding the modification and, in fact, were told that they would not receive the final papers related to the modification until they made three consecutive payments under the terms of the October 14, 2009 modification.

24. In reliance upon the Bank of America's Offer and their acceptance of the Offer, the Waronker's subsequently remitted to Bank of America a December 2009 mortgage payment of $4,078.91, the monthly payment amount set forth in the Offer. The December remittance was credited to Bank of America's account on January 4, 2010.

25. The Waronker's remitted subsequent payments on January 20, 2010, which was credited to Bank of America's account on January 27, 2010 and on February 15, 2010, which was credited to Bank of America's account on March 2, 2010.

26. In December 2009, Bank of America forwarded to the Waronker's Florida address documents that offered a modification of the Loan under a program for which the Loan was not eligible. Understanding the offer to have been made in error, and knowing that the papers did not relate to the October 2009 modification as three consecutive mortgage payments had not yet been made, Mr. Waronker disposed of the documents.

- 4 -

27. In January 2010, a Bank of America representative contacted Mr. Waronker and inquired as to why the December 2009 loan modification documents had not been executed and returned.

28. Mr. Waronker conveyed to this individual that the Loan had been effectively modified in October 2009 and the December 2009 papers had been sent in error.

29. Bank of America's representative conveyed to Mr. Waronker that these types of mistakes happen all of the time, that Bank of America sometimes sends its clients two or three loan modification offers, sometimes even sending them after the client has lost or sold the home.

30. The representative assured Mr. Waronker that the matter could be resolved and attempted to conference in a second Bank of America customer service representative. Mr. Waronker was disconnected from the call, and the Bank of America representative who had contacted him did not make contact or attempt to contact Mr. Waronker again.

31. Assuming the matter was resolved, the Waronker's continued to make their monthly mortgage payments in the amount set forth in the Offer.

32. In March 2010, however, Mr. Waronker reviewed his account with Bank of America and realized that the Bank was not crediting his payments under the Loan modification. Rather, the payments were being credited as though the modification had never occurred.

33. Upon recognizing Bank of America's error, Mr. Waronker began efforts to correct it. During the month of March, he made numerous calls to Bank of America's customer service center, but no one was able to help him.

34. On March 22, 2010, Mr. Waronker spoke with Kevin Gandi and Mr. Gandi informed Mr. Waronker that the Bank could not find the Loan modification paperwork and that the Waronker's were in default.

35. Unwilling to continue having his payments credited towards late fees and penalties on a loan which was no longer in effect, but on which Bank of America considered the Waronker's to have defaulted, on March 23, 2010, Mr. Waronker placed a stop payment on that month's mortgage payment.

36. On April 1, 2010, Mr. Waronker went to the Bank of America Pima Pinnacle Peak Banking Center in Scottsdale, Arizona and spoke with the branch manager. The manager contacted Bank of America regarding the problem and was informed that Bank of America could not find the loan modification paperwork. The manager faxed to the Bank of America home loan department a copy of the Loan Modification as well as copies of the processed checks reflecting continuous timely mortgage payments beginning in December 2009.

37. It was affirmatively represented to Mr. Waronker that the matter would be resolved within two weeks; however, no one from Bank of America ever communicated anything more to the Waronker's.

38. In mid-April, BAC Home Loans mailed to the Waronker's a Notice of Intent to Accelerate dated April 5, 2010.  The Notice of Intent to Accelerate indicates that the Waronker's owe nearly $50,000.00 in past due payments, late charges, and other fees and threatens foreclosure of the property.

39. On April 15, 2010, Mr. Waronker spoke with Kim Mehta, a Bank of America representative in the home retention department, who acknowledged to Mr. Waronker that Bank of America had made an obvious error.

40. Ms. Mehta represented to Mr. Waronker that she would need approximately ten days to correct the error, that she would personally attend to it, and that she would personally contact him once the matter was resolved. Mr. Waronker expressed his skepticism, telling Ms. Mehta that these representations had been made before. Ms. Mehta responded stating that she was different and that she would call him back. Ms. Mehta never called.

41. On May 5, 2010, Mr. Waronker spoke with a Bank of America customer service representative supervisor named Lorraine. Like the customer service representatives before her, Lorraine acknowledged the Bank's error and affirmatively represented to Mr. Waronker that she would resolve the issue. She asked to place Mr. Waronker on hold. Mr. Waronker suggested that she take his number down in case he was disconnected. Lorraine indicated that it would not be a problem and that she would get back to him. While on hold, Mr. Waronker was transferred to another Bank of America customer service representative in a different Bank of America department who had no idea why he was calling and stated that he could not do anything to help him. Lorraine never contacted the Waronker's.

42. On May 13, 2010, Mr. Waronker made his final call to Bank of America. At that time he spoke with two different customer service supervisors: Debbie and Steve. Both assured him that they recognized the problem and they would work to resolve it. Both calls concluded without resolution of the underlying issue; neither call was followed with a return call from Bank of America.

43. On June 7, 2010, the Waronker's received a Statement of Breach or Non Performance and Election to Sell Under Deed of Trust Arizona, Notice of Trustee's Sale Arizona, and a document titled "Important Legal Notice".

- 7 -

44. On June 8, 2010, undersigned counsel corresponded with Barbara J. Desoer, President of Bank of America's Home Loans division and Ed O'Keefe, General Counsel for Bank of America Corporation. The correspondence requested that someone from Bank of America contact undersigned counsel to discuss resolution of this matter on or before June 15, 2010. No one from Bank of America contacted undersigned counsel.

45. On July 9, 2010, undersigned counsel contacted Bank of America prior to filing a complaint for injunctive relief and seeking a temporary restraining order.

46. Undersigned counsel spoke with Kelly Freeman, a supervisor at Bank of America. Ms. Freeman researched the status of the loan and affirmed that an egregious error had been made and the loan should be administered under the terms of the Loan Modification. Ms. Freeman represented that all negative credit reporting, late fees, and attorneys' fees incurred related to the Trustee's sale would be reversed and arrangements would be made to allow the past due mortgage payments to be made.

47. Over the next few months, undersigned counsel worked with Ms. Freeman to ensure the Loan Modification was in force and to develop a payment plan for past due payments that was agreement with the parties.

48. On September 9, 2010, Ms. Freeman forwarded a Repayment Plan Agreement that purportedly made arrangements for payment of missed mortgage payments in accordance with the terms of the Loan Modification. The Repayment Plan Agreement, however, did not properly reflect the past due amounts and resulted in a monthly payment of almost $10,000.00.

49. Undersigned counsel contacted Ms. Freeman and informed her that the terms of the Repayment Plan were unacceptable and the offer was rejected.

50. Ms. Freeman never communicated with undersigned counsel again.

- 8 -

51. The voicemail message on Ms. Freeman's telephone line indicated that the number was now assigned to someone else.

52. Undersigned counsel left numerous messages asking for Ms. Freeman's current contact information, but none of undersigned counsel's calls were returned.

53. Over the next six months, undersigned counsel and Mr. Waronker called Bank of America and requested that someone contact them regarding the Loan Modification.

54. Bank of America has not communicated with undersigned counsel or Mr. or Mrs. Waronker since September 2010, except to inform Mr. and Mrs. Waronker, via a mass email sent on June 2, 2011, that BAC would no longer be serving the loan.

55. On March 4, 2011, undersigned counsel corresponded with Barbara Desoer and Ed O'Keefe, asking them to contact her prior to filing suit.

56. Neither Barbara Desoer, Ed O'Keefe, nor anyone from Bank of America ever contacted undersigned counsel.

57. On March 30, 2011 undersigned counsel corresponded with Barbara Desoer and Ed O'Keefe again and, again, received no response.

**COUNT I – DECLARATORY JUDGMENT**
**Defendants Bank of America and BAC Home Loans**

58. Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs as if fully set forth herein.

59. Plaintiffs seek relief in this Court under 28 U.S.C. § 2201 *et seq.*, the Federal Declaratory Judgment Act and A.R.S. § 12-1831, *et seq.*, the Uniform Declaratory Judgments Act.

60. Bank of America extended to Plaintiffs an offer to modify their loan. Plaintiffs accepted the offer, in accordance with its terms. Consideration exists in the form of escrow fees and subsequent mortgage payments.

61. Bank of America has breached the contract by improperly crediting the mortgage payments Plaintiffs made and refusing to acknowledge the October 14, 2009 Loan Modification.

62. Bank of America has repeatedly refused to honor the contract.

63. Plaintiffs are a party in interest in the October 14, 2009 Loan Modification and are entitled pursuant to the provisions of 28 U.S.C. § 2201 *et seq.* and A.R.S. § 12-1831, *et seq.* to have their rights and legal relations declared as a matter of law as they relate to the October 14, 2009 Loan Modification.

64. Plaintiffs seek a declaration from this Court that a valid and enforceable contract exists between the parties and Bank of America has breached the October 14, 2009 Loan Modification by refusing to acknowledge it and improperly applying mortgage payments, as though the Loan were never modified.

65. Plaintiffs seek a declaration from this Court that Bank of America and BAC Home Loans owe Plaintiffs a duty to comply with their contractual duties under the October 14, 2009 Loan Modification and apply all mortgage payments made subsequent to October 14, 2009 to the mortgage in accordance with the terms of the modification.

## COUNT II – BREACH OF CONTRACT
**Defendants Bank of America and BAC Home Loans**

66. Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs as if fully set forth herein.

67. A valid and enforceable contract modifying the terms of the Loan existed between the parties.

68. Bank of America and/or its agent, BAC Home Loans, breached the Loan modification contract when they failed to process the Waronker's monthly mortgage payments in accordance with the terms of the contract.

69. As a result of the breach, the Waronker's have suffered damages and continue to suffer damages, including the potential loss of the Property, in an amount to be proven at trial.

## COUNT III – CONSUMER FRAUD
### Defendants Bank of America and BAC Home Loans

70. Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs as if fully set forth herein.

71. Bank of America and/or its agent, BAC Home Loans, represented to the Waronker's that it would modify the Loan in accordance with the terms of the Offer.

72. Bank of America and/or its agent, BAC Home Loans, made this representation in connection with the sale of a loan modification contract.

73. Bank of America and/or its agent, BAC Home Loans misrepresented their willingness to modify the Loan in accordance with the terms of the Offer as they have subsequently failed to process the Waronker's monthly mortgage payments in accordance with the terms of the Offer.

74. These actions violate the Arizona Consumer Fraud Act.

75. The Waronker's accepted and relied upon Bank of American and/or BAC Home Loans' representations and as a result, have suffered consequent and proximate injury, including the potential loss of the Property, in an amount to be proven at trial.

### COUNT IV– NEGLIGENT MISREPRESENTATION
**Defendant Bank of America and BAC Home Loans**

76. Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs as if fully set forth herein.

77. Acting within the course of their business, profession, or employment, agents of Bank of American and/or BAC Home Loans supplied false information to the Waronker's in or about January 2010, on or about April 1, 2010, on or about April 15, 2010, on or about May 5, 2010, and on or about May 13, 2010.

78. On each of these occasions, agents of Bank of American and/or BAC Home Loans informed Mr. Waronker that the Bank had made an error in processing the Loan modification, and that the error would be corrected within approximately two weeks time.

79. The Waronker's justifiably relied on this information and, as a result, believed that the Loan modification would be accepted by the Bank and the errors in payment processing would be corrected.

80. As a result of the Waronker's justifiable reliance on the false information provided to them by the various Bank of America or BAC Home Loans customer service representatives, the Waronker's have suffered, and will continue to suffer, pecuniary loss, including the potential loss of the Property, in an amount to be proven at trial.

### COUNT V– NEGLIGENT SUPERVISION
**Defendant Bank of America and BAC Home Loans**

81. Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs as if fully set forth herein.

82. Bank of America and/or its agent, BAC Home Loans, knew or should have known that its employees were not competent to provide assistance to customers, like the Waronker's, seeking modification of their home loans.

83. Bank of America and/or its agent, BAC Home Loans, knew or should have known that its employees were not competent to assist the Waronker's in correcting the Bank's error in properly processing the Loan modification and subsequent payment.

84. Employees of Bank of America and/or its agent, BAC Home Loans, conveyed to Mr. Waronker that errors in home loan modifications were occurring regularly.

85. The employees of Bank of America and/or its agent, BAC Home Loans, were not properly supervised.

86. As a result of Bank of America's and/or its agent, BAC Home Loans', failure to properly supervise its employees, the Waronker's have been injured in an amount to be proven at trial.

**COUNT VI– INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**Defendant Bank of America and BAC Home Loans**

87. Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs as if fully set forth herein.

88. Bank of America and/or its agent, BAC Home Loans, conducted itself in an extreme and outrageous manner when it repeatedly and continuously, over the course of more than seven months refused to recognize a contract, the terms of which Bank of American and/or BAC Home Loans proposed, and failed to properly credit the Waronker's timely made mortgage payments under the terms of that contract.

89. Bank of America and/or its agent, BAC Home Loans, recklessly disregarded the near certainty that their conduct would cause emotional distress to the Waronker's.

1   90.  The Waronker's suffered, and continue to suffer, emotional distress as a result of Bank of America and/or BAC Home Loans' conduct.

WHEREFORE, Plaintiffs hereby pray for judgment in their favor and against Bank of America, BAC Home Loans, and as follows:

A. That this Court issue a declaration that a valid and enforceable contract exists between the parties in the form of the October 14, 2009 Loan Modification and that Bank of America has breached the contract.

B. That Plaintiffs be awarded compensatory damages in an amount to be determined at trial;

C. That Plaintiffs be awarded punitive or exemplary damages in an amount to be determined at trial;

D. That Plaintiffs be awarded damages for their emotion distress and mental anguish;

E. That Plaintiffs be awarded any other economic or non-economic damages that result from Defendants' conduct;

F. That Plaintiffs be awarded pre- and post-judgment interest at the highest applicable rate;

G. That Plaintiffs be awarded their attorneys' fees incurred in bringing this action, pursuant to A.R.S. § 13-341.01; and,

H. That this Court award such other and further relief as it deems just and proper under the circumstances.

DATED this 12th day of July, 2011.

**KUNZ PLITT HYLAND
HYLAND & DEMLONG**

By: s/Aeryn A. Heidemann
Aeryn A. Heidemann
3838 N. Central Avenue, Suite 1500
Phoenix, Arizona 85012-1902
Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on 12th day of July, 2011, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing.

s/L. Gilroy